Ruffin, C. J.
 

 That part of the decree, which dismisses the bill, was probably inserted by mere inadvertance, as it is so obviously erroneous. On a motion to dissolve an
 
 *345
 
 injunction, there may be an order for the dissolution, or for its continuance to the hearing. But the bill cannot be dismissed before the hearing ; for that is the ultimate disposition of the cause, after the parties have taken issue by a replication and taken their proofs upon the issues, and a hearing had thereon upon the merits. It is contrary to the course of the Court, and also unjust to the parties, to dispose of the bill at an earlier stage; for here, for example, the plaintiffs ought to have had liberty to reply to the answer, and establish by evidence, if they could, the agreement, alleged on one side and denied on the other, that the widow’s purchases and her distributive share should extinguish each other to the amount of the smallest of the two. The decree must, of course, be reversed in that respect.
 

 But the Court holds, that it was also erroneous to dissolve the injunction. For, without any such agreement for setting one demand against the other, the plaintiffs have a clear equity, and a right to the relief they ask. It need not be considered now, whether the conveyance of the widow’s dower, upon the consideration and under the circumstances, stated was not fraudulent against creditors, and whether this surety of an insolvent principal —as the other parties concur in describing Mrs. Allen— is not in a situation by reason of the judgment against the plaintiffs, to insist on it as against these defendants. There is great reason to consider it fraudulent in an insolvent woman, against whose body no process is given in our law, to convey all her visible estate to a son in-law, for the purpose of securing to herself an intangible annuity, in the form of his obligation to provide for her a comfortable support as long as she lives. That is especially' true, where the circumstances render it so highly probable, as in this case they do, that the object of those parties was not merely to provide for the mother in law, but in so doing to throw the burden of the debt on the
 
 *346
 
 surety, because they thought the surety ought in conscience to pay it, and then deprive the surety of the means of getting reimbursed from the principal’s property. But, for the present purpose, that transaction maybe deemed fair, and still the plaintiffs ought to be relieved, upon the ground, thqt the creditor has in his hands adequate means belonging to the principal to satisf}' the debt or a great part of it, and, as the principal is insolvent and the surety has no other means of obtaining indemnity, if he should pay the money, it is the duty of the creditor to protect the surety by applying the fund to the satisfaction of the, debt, instead of raising it from the surety. First, let the case be considered in respect to the sum, in which the administrator of Spencer is indebted to the widow for her. distributive share. It is quite clear, that if one. who is entitled to a distibutive share, becomes indebted to the administrator, the latter has a right in equity to require, the next ol bin to take his own debt in payment of his distributive share. And if the next of kin sell the share, it cannot affect the rights of the administrator; at all events, it cannot, when such sale is made after the debt to the administrator has fallen due and the next of kin lias also become insolvent. For, although a distributive share may be assignable in equity, yet it is not assignable like a negotiable instrument, but the assignee only comes in the shoes of his assignor and is subject to all equities against the claim. If, then, the widow had assigned her share to any third person, the administrator would still have been at liberty to insist, that such assignee should take the widow’s bond in payment, as she would have been obliged to do. Having that security in his hands, the creditor would have been obliged to insist on it for the protection of the surety, and he could not surrender it to the prejudice of the surety without discharging the latter
 
 pro tanto ;
 
 for sureties are entitled to all the securities, which the creditor acquires, and the latter cannot
 
 *347
 
 capriciously nor for bis own advantage discharge or impair them. He cannot act wilfully to the prejudice of the surety ; and if he does, he is bound to make good the loss to the surety.
 
 Nelson
 
 v.
 
 Williams, 2 Dev.
 
 & Bat. Eq. 118. We conceive, therefore, that the creditor here, buying, as he did, with a knowledge of Mrs. Allen’s insolvency, stands bound to the sureties in the same manner precisely, as he would be, if, after he knew of her insolvency, he paid the distributive share to her or to her assignee ; for he could not have made such purchase or payment, without, in effect,giving up a specific security for the debt upon the real debtor’s effects, apparently with the view of throwing the debt on the surety, as that would obviously be the necessary consequence. For the same reasons he is bound to apply towards the dis'charge of the debt, at least in respect to the surety, the value of such an annuity as he is bound himself to make to Mrs. Allen — that is, her comfortable support for life. All these mutual liabilities have arisen in the administrator's time, and they constitute demands, which, on equitable principles, ought to extinguish each other ; and there can be no doubt, that the administrator would insist thereon, if he had no other security for his debt but the widow’s own bond. But he is equally bound to take care of the suretjr, when he can ; and if he wantonly or in bad faith refuse to do so, he must take the loss to himself. There can be little doubt, that the matter would have been readily adjusted if Allen had lived ; and the course of the defendants, since his death, has obviously been adopted as a device to avoid what they considered the hardship of Allen’s getting the slaves purchased by his wife and at the same time leaving her to pay the price of them. Indeed, nearly as much is stated in the answer, which insists that in equity and conscience the debt thereby became Allen’s own. But that notion is entirely unfounded ; for, at law, the negroes belonged to the husband by his redu
 
 *348
 
 <sing them to possession, while the price remained the price of the wife as principal in the bond and her husband as her surety only; and there is no equity between those two parties, which will enable this Court to vary their respective rights, as fixed by the law.
 

 Upon the whole, then, the Court hqlds, that the plaintiffs are entitled, at least, to have the distributive share of Mrs. Allen in the estate of 'Spencer applied in their exoneration, and also the value of the dower land, or, father, of such part of the annuity to the widow as the land would purchase-; and, therefore, that the order dissolving the injunction was erroneous and must be reversed with costs. It is true, it docs not appear, that the debt will be thereby satisfied. But, on the other hand, it does not appear, that it will not be ; and it is the fault of the defendants not to have stated the accounts so as to show the amount of the distributive share. Those matters can now appear only by an enquiry:; and therefore the injunction ought to stand to the hearing ; when an enquiry can be directed.
 

 Per Curiam.
 

 Decree accordingly.